RECORD IMPOUNDED

 NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-0490-15T4

B.M.,

 Plaintiff-Respondent,

v.

C.C.,

 Defendant-Appellant.
_______________________________

 Submitted March 28, 2017 – Decided July 28, 2017

 Before Judges Rothstadt and Sumners.

 On appeal from Superior Court of New Jersey,
 Chancery Division, Family Part, Gloucester
 County, Docket No. FV-08-178-16.

 Rebel Brown Law Group, L.L.C., attorneys for
 appellant (Kourtney A. Borchers, on the
 brief).

 Klineburger and Nussey, attorneys for
 respondent (Natalie E. Wentz and Carolyn G.
 Labin, on the brief).

PER CURIAM
 Defendant C.C. (Cindy)1 appeals from an August 13, 2015 final

restraining order (FRO) issued in accordance with the Prevention

of Domestic Violence Act (the Act), N.J.S.A. 2C:25-17 to -35. For

the reasons that follow, we reverse and remand.

 At the FRO hearing, only plaintiff B.M. (Bill) was represented

by counsel. After appearances were entered, the parties advised

the trial court that they would be the only witnesses and that

they were ready to proceed. The court, without further comment,

instructed counsel to proceed with the direct examination of Bill.

Cindy did not exercise her right to cross-examine Bill, but was

cross-examined when she testified.

 The following facts were revealed. Bill and Cindy are the

unmarried parents of three young children and resided together for

the last ten years of their almost twelve-year relationship. They

broke up following incidents in the summer of 2015, which became

the subject of Bill's complaint under the Act.

 On July 13, Cindy and Bill argued over Bill's involvement

with another woman. Cindy then pushed Bill against his car, and

punched him in the back of his head and in the face causing a

1
 To protect the parties' confidentiality, we utilize first name
pseudonyms for the convenience of the reader, and intend no
disrespect.

 2 A-0490-15T4
black eye and abrasion under his eye. Bill did not seek any legal

redress.

 On August 5, after Bill came home around midnight, the parties

again argued over his relationship with the other woman, and Cindy

hit him. She then drove to the woman's house and yelled at the

woman while outside of her home. Later that day, Bill obtained a

temporary restraining order (TRO) against Cindy.

 After Cindy was served with the TRO approximately a week

before the FRO hearing, she tried to commit suicide and was treated

at a hospital crisis unit. She admitted hitting Bill on both

occasions because he was cheating on her.

 The court determined

 based on the credible testimony of [Bill] that
 [Cindy] has a substance abuse issue, that the
 domestic violence is escalating, children were
 present during both incidents, [Cindy]
 acknowledges that after the August 5 incident
 she threatened suicide, taken to [c]risis and
 tested positive for crack cocaine, the [c]ourt
 will order a[n] [FRO] against [Cindy] based
 on the assault[s] that took place on July 13
 and August 5 of 2015.

The court did not set forth any legal conclusions in its decision.

 On appeal, Cindy contends that the FRO should be vacated

because the court failed to make adequate findings of fact and

conclusions of law pursuant to Silver v. Silver, 387 N.J. Super.

112, 125-27 (App. Div. 2006), regarding a predicate act of domestic

 3 A-0490-15T4
violence and the need for entry of the FRO. She also contends

that the court violated her due process rights by not advising her

of the serious nature of the matter and her right to obtain

counsel.

 We first address the due process argument. Domestic violence

is a civil offense, and defendants are not entitled to full

criminal procedural protection. J.D. v. M.D.F., 207 N.J. 458, 474

(2011). Nonetheless, due process allows litigants a meaningful

opportunity to defend against a complaint in domestic violence

matters, which would include the opportunity to seek legal

representation, if requested. Franklin v. Sloskey, 385 N.J. Super.

534, 540-41 (App. Div. 2006). Such determinations are often fact-

sensitive. D.N. v. K.M., 429 N.J. Super. 592, 606-07 (App. Div.

2013). "[E]nsuring that defendants are not deprived of their due

process rights requires our trial courts to recognize both what

those rights are and how they can be protected consistent with the

protective goals of the [Domestic Violence] Act." J.D. v. M.D.F.,

207 N.J. 458, 479 (2011).

 This case is unlike the situation in D.N., where we held that

 the trial judge adequately questioned [the
 defendant] regarding her decision to decline
 the opportunity to obtain legal
 representation. The judge asked [the
 defendant] whether she desired the opportunity
 to seek counsel, particularly pointing out
 [the plaintiff] was represented. She

 4 A-0490-15T4
 questioned whether [the defendant] understood
 what would result if [the plaintiff's] request
 for entry of an FRO was granted, briefly
 outlining such possible consequences,
 including the civil penalty, entry in the
 domestic violence registry, and requirement of
 fingerprinting. She also advised [the
 defendant] she could request an adjournment
 to consult with an attorney, or to prepare for
 the final hearing. [The defendant] denied the
 need to do so, believing hers was the stronger
 case. That her confidence was ill-founded is
 not a basis to conclude the court erred. The
 record also discloses the judge had presided
 over prior domestic violence matters involving
 the parties, and [the defendant's] responses,
 in part, reflect her familiarity with trial
 procedures and the results of an FRO.

 [D.N., supra, 429 N.J. Super. at 607.]

 Here, after the parties' appearances were entered and the

court inquired as to who would testify, the court did not advise

Cindy of her right to counsel. Further, there is no indication

in the record that Cindy was mindful of the domestic violence

hearing process or the consequences of being found guilty. We

therefore conclude that she did not understand her right to employ

counsel, nor the impact of an FRO order, and reverse and remand

for a new hearing. See Mazdabrook Commons Homeowners' Ass'n v.

Khan, 210 N.J. 482, 505-06 (2012) (discussing requirements for the

waiver of constitutional right).

 In reaching our decision, we need not consider Cindy's

remaining argument that the court failed to make adequate findings

 5 A-0490-15T4
of fact and conclusions of law pursuant to Silver. However, given

our remand, we briefly mention our concerns with respect to the

court's determination that an FRO was necessary to protect Bill.

 Findings by the trial court "are binding on appeal when

supported by adequate, substantial, credible evidence." Id. at

412 (citing Rova Farms Resort, Inc. v. Investors Ins. Co., 65 N.J.

474, 484 (1974)). In Silver, we held that once the trial court

has determined that a defendant has committed a predicate act, it

then must decide whether to issue a restraining order to protect

the victim. Silver, supra, 387 N.J. Super. at 126. The commission

of a predicate act does not automatically require that a

restraining order be issued. Id. at 126-27. Rather, the court

will only issue a restraining order if it is "necessary, upon an

evaluation of the factors set forth in N.J.S.A. 2C:25-29(a)(1) to

-29(a)(6), to protect the victim from an immediate danger or to

prevent further abuse." Id. at 127. Here, the court's mere

statement that "domestic violence is escalating" clearly does not

set forth sufficient facts or legal analysis supporting its

decision to enter an FRO to protect Bill from future acts of

domestic violence by Cindy.

 We reverse and remand for a new hearing consistent with this

opinion. On remand, the case should be reassigned. R. 1:12-1(d);

Pressler & Verniero, Current N.J. Court Rules, comment 4 on R.

 6 A-0490-15T4
1:12-1 (2013) ("[A] matter remanded after appeal for a new trial

should be assigned to a different trial judge if the first judge

had, during the original trial, expressed conclusions regarding

witness credibility."). We do not retain jurisdiction.

 Reversed and remanded.

 7 A-0490-15T4